In honor of this case on the block, I move that Act Number 17 in the Ad Hoc Zero to be 6-8. Senate 407, Senate 407, the attorney is in favor of Municipal Corporation Defendant Appellee, I move on behalf of the attorney's attorney, Mr. W. Randall Bowden. I move on behalf of the attorney. Senate 410, Mr. John T. Gilbert. All sides ready to proceed? Yes, ma'am. Council, then you may proceed when you're ready. Thank you. Hi, I'm Randall Bowden and I represent Mr. Periano, the plaintiff appellant. He's in Florida because he's relocated and I have his lawyer, I think, in another area, so thanks for giving us the opportunity to have an oral argument. We spent a lot of time writing and rewriting and respectfully, I was just going to offer to you folks if I may, just any questions you have. I have a question. There's no question that you didn't fail to comply with the midnight filing deadline. You didn't fail, you failed to comply with the midnight filing deadline. Yes, that's the intention. And the failure was due to the user's equipment, not due to the equipment of the court. I agree, and to be subtle, I don't know if we'll ever know what equipment it was. We would find out, David, from somebody and wherever the vendor is saying we don't know of any reports, but your take is exactly how you presented it, the category of a user error. Am I reading it correctly that your clerk or your secretary, whomever it was, am I reading it correctly that she tried to send it first with the document attached and then it came back? And then what was it that she had to get up and run and grab the document again? To my knowledge, I'm going to go with Maureen's affidavit, and I'm hovering around her, and to get to your question, obviously I am writing to the last second, so at 11.58, in it goes. Maureen has been happy, goes in, whatever it does, and when it lit up, it said resubmit or something like that, as she said in her affidavit, so she didn't go anywhere, she didn't do anything. As I understand, you just pushed the other button, and it went in, and when it comes out, I'm excited. I'm trying to remember that for you. It's like two minutes and three minutes and 28 seconds or whatever it is that's in our brief, and that's how it came out. And then our argument, obviously, is that under their local rule, which all of the counties have now, because they were patterned after, I think at first I didn't cook, and then in DuPage was a test market, so they have that ameliorative clause, as I call it, that says if it's a user error, and it's a technical, and I always get this technical problem, then they file a petition before the trial court, and I call it non-partout, there's some technicalities there, but then you can just revert it back, and unfortunately that didn't happen. You bring up a good point. It was technical failure. I'm sorry, this will be my last question. Technical failure, and in the manual, the Supreme Court manual talks about technical failure, but again, this is where my first question was, is whose software was there the technical failure, and is that relevant? Well, having tried to analyze this as much as possible, we found three, at least three key words to worry about. When the Supreme Court started this, and I'm still confused when they did, either around 2000 or some other sites on it, they used the word technical failure, technical failure, and then everybody else in their handbooks suddenly used the word technical failure. It's a technical problem, and if it's a technical failure, it's a technical failure. If it's a technical problem, it's a technical problem. Are those terms, though, by their very nature, by their usage, are they ambiguous? No. Or is there a precise definition of what is a technical failure? Well, Justice Pence, I think what the Supreme Court did is define the technical failure for us, but their rules, interestingly, didn't mention technical problems, user of system errors. But to get to your question, the other folks who, and obviously we're interested in what they were counting, they don't use technical failure, they use technical problems, and no, they didn't define it. So our offshoot in that is, and we've got the Sensi case, and we've got another Supreme Court case from Lake County, Kohlberg, C-O-R-B-E-R-T, at 201-7-0-1-2-1-5-3-6. It's a statutory interpretation, which you folks are well versed in better than I, and you've got to make sense of every word used there. We have a section that we're interested in, section 22.01-N-2-4, titled System or User Errors. So all those words, even though it's in the title, have to have some meaning, and you go down some subsections and put it in the form. Well, here's the bottom line. Yes, ma'am. Where do we draw the line in the sand? When is it late, and when is it timely? Well, I believe, and I have a couple of cases I want to just cite for you because it was good language I just found. We commenced the process at our computer at 11-58. We have gone through the course. I don't know how much we paid for it. We paid for the course. That's irrelevant. Well, I'm… Where do we draw the line in the sand?  When is it timely? When would your document have not been timely? I think it's timely because we posited it before the deadline of 11-59 on the 3rd, and then when it printed out to confirmation clerk, it was 2 minutes and 38 seconds late. I think that's timely. Also, if it would have printed out 1-36 or 7, I still think that's timely. I think the dependent, the actor, the motion has to be our conduct. We started it. We're doing it. What happened? There's a couple of cases, and I think it's right on point. I have them here, if I can call it out. Basically, with John Gioberti, they say some fellow, I don't know, he wasn't in a good relationship with the clerk out there, but he went filing it at the clerk's office, 10-5, and he runs out to his car to get some of the papers, and they say, why would you close the door? Anyway, there's a case that I have citing that, and they appoint our doing what we have to do, which is put in the room. Boom, we're at the clerk's office. It's in there. And we didn't have to go out to the car or anything. And it says, if I had a moment, I can give you that language. I will find it, and it's really interesting in what they say. Speaking of whether you took the course or not and speaking of things that aren't relevant, let's talk about footnote number six in your brief. Your opponent is a bit taken aback by this, as I think I'm not surprised that he is, but you did some research on your own, and then you put it in the brief to tell us about who you spoke to and what research you did. How is it that this type of research is allowed to be put in an appellate brief, and why should we not strike this whole paragraph or this whole footnote number six? Thank you. That's a good question. I wrote it because it was intended, obviously, for the Circuit Court of Winnebago County and Judge Prochaska, and I'm going to say I've been criticized for this a little poetic license, but it wasn't objected to. There was no motion to strike anywhere. So when we're writing this, I just picked it up, and it has to be stricken. It's stricken, but I'm just trying to give a background on it, which actually I think... But shouldn't that have been raised at the time of your hearing? This is information that's not part of the appellate record. I think it should have been raised if the State chose it in the County of Winnebago, but I think footnote six is just frosting on the cake. The simple thing is we've got their local rules. If there's a user error, and it's due to a user error, and you have good cause, and you tend to that to the trial judge, and then with his discretion, you can allow... Let me ask you this. Whose burden of proof is it to show that you complied and there was a technical error or technical failure or problem, whatever you want to call it? Well, obviously we have the obligation, Justice Jorgensen, to file it, and we assert that Maureen's affidavit says exactly what she did, and there's no comment. But that's your burden. Yes, I have to say that, and to my knowledge, there's no reputation in that field. So would we then look to abuse of discretion as to the trial courts? Do we give great deference to the trial court's finding, in fact? Well, I spent last night, and I've outlined respectfully what Judge Prochaska said, and I would just comment he made all sorts of inferences. She's not trained properly. I don't know where he got respectfully that information. He's got a whole litany of things, which I covered in my reply brief of what he commented, which I think were totally unfair, not supported by the record, just speculating. Maybe she needs more training, maybe this or that. All right, but again, would it have been your burden to put in the record all of her training, all of her experience, all of the reasons why it could not have been failure on your end? And I think respectfully, we did. Her affidavit, I write like Charles Dickens, but Maureen is very concise. She covered I am experienced, trained, degreed paralegal. I have been trained in the Winnebago process. I've used that many times before, and there is no reason that I can think the record establishes that she lacked training or skill. I've been really thinking, as you know, the whole state is up in the air, particularly Cook County, and you know that the Supreme Court decided several weeks ago with regard to Justice Evans' petition to say this ain't going to happen, we can't possibly implement it. So the Supreme Court, in an order of two or three weeks ago, didn't give them their year extension, but they said you don't have to implement this until July 1st, 2018. I read carefully about the others of us, but they didn't do that. But there's a lot of consternation. The one thing I want to say anecdotally was Justice was in Kane County three weeks ago, and I'm in one of the L categories. There must have been three or four lawyers who came up. Again, kind of like footnote number six, how do we ñ I mean, I'd love to sit and chat with you back and forth, but if it's not in the record below, we can't discuss it at the appellate court with all due respect. I respectfully understand that. Okay, so let's keep your argument anecdotally. I understand, but we can't take your anecdotes here. Maybe at a bar, having a drink, you could talk anecdotally, but not at the appellate court. If I may respectfully just say, in the field, there's a lot of confusion and a lot of balking toward the trial judge and the clerk. Right, but nonetheless, you choose to use this system. We had no choice. They had mandatory refiling. How about 10 o'clock? How about 9 o'clock? How about the day before? So my point is, if you're getting under the wire, isn't there an inherent risk that perhaps it's not going to get done? Yeah. You know, it is the analogy that I'm going to the clerk's office in my car, and it usually takes a half an hour, and I get a flat tire. Yeah. I didn't leave enough time. I didn't plan ahead. Sure. Let's assume, for the sake of argument, this is a published opinion, and we say, for all of everybody out there, this is timely, this is not. Tell me where the bold line is. I don't know if this is the right line. There has to be a bright line. I would like to say, for the United States Court of Appeals, Seventh Circuit, just found this, and it's Justice Easterbrook, who was the chief judge in the case of Cicero, actually the town of Cicero. Did you cite that in your brief? No, I just found it last night. Okay. Town of Cicero. Have you shown it to counsel? Counsel. Excuse me. Have you shown it? It's just what I could get to cite it respectfully. It's number 113876. Just for the language. I wish I was smart enough to say this, and I'll give it to John, too. But it says, computers can crash, and, of course, e-filing software can have bugs. If Justice has tried to file an 11 p.m. on November 22nd, Justice is the filer. Only if the system would not accept his document, then he could take advantage of Rule 683, which is a federal rule that gives you some time, which extends the time when the court's office is inaccessible. And then it says, what's more, we help, and they have a Farzana case. I have that. But the point of it is, the document entered to the e-filing system is e-filed on the day of the tender. Even if a programmer's failure to participate in all possible combinations of circumstances leads the system to reject the filer. Just as the document deposited visibly in the clerk's office is filed on that date, even electronically to the court, it's filed on the date of transmission, no matter what the e-filing system does in response. Counsel, I'm hearing you're reading from this case. Mr. Giliberti has no idea where you are, what language you're quoting. This is a little irregular. You can't just come in here and quote cases that you found the night before without opposing counsel having some idea of where you're going with this. You just can't do that. And next time maybe you ask for leave of court to cite a new case and give a copy of the case to the appellate justices. That might be the proper method, the proper way to go. I'm just using it as a general, I think, common sense proposition. The rules, we do have rules here. You just can't do that. Thank you. You'll have an opportunity for rebuttal. Thank you so much. Thank you. Counsel. Thank you, Your Honors. John Giliberti, Assistant State's Attorney for the County of Winnebago, Illinois. May it please the Court, Counsel. The issue in this case, Your Honors, is whether the trial court abused its discretion when it determined not attaching a computer file is not a technical problem under local circuit rule and not good cause to backdate an untimely, electronically filed motion to reconsider. And the appropriate standard of review here is abuse of discretion. That's from the second district case, Salazar v. Wiley Sanders Trucking Company, that I said in my brief. How about the issue with respect to the local court rule? Do we review what's raised concerning the local court rule for an abuse of discretion? Yes, that's an abuse of discretion, Justice, because the circuit court was enforcing its local rule. And if you read Salazar's case, it does say when a circuit court is enforcing a local rule, that is a standard. It's abuse of discretion. And I think, as the court knows, trial court abuse is its discretion where its ruling is arbitrary or fanciful or where there is no reasonable person would agree with the court's position. And Plaintiff's Counsel admits on page 2 of his reply that the standard is abuse of discretion. With a little ‑‑ it wasn't clear in his initial brief he said it was de novo, but in his reply brief, he does say the issue here is whether Judge Prochaska abused his discretion. So I think that is the standard. It's undisputed, Justices, that Plaintiff's Counsel did not electronically file his motion to reconsider before them in that deadline. That's uncontested. It's undisputed. If you look at the affidavits ‑‑ It's not undisputed that you're not denying that he may have attempted to file ‑‑ That's correct. Correct. If you look at the affidavits, which Judge Prochaska, which is in the record, if you look at the paralegals affidavit, paragraph 4 reads, after clicking next, the screen did not move to next step. Verification of submission. On this page, the caption, quote, choose a file, was noted on her computer, indicating my attachment did not upload. Then we have the affidavit of our Chief Deputy Clerk in Winnebago County, Circuit Clerk's Office, Tom Lawson. Paragraph 24 reads, if Plaintiff's Counsel's assistant initially attempted to upload the motion to reconsider and receive the message, choose a file, this would be a failure on the filer's end, not a technical problem with the I-2 filing system. So it's really undisputed that there's no problems in the record. There is records from the court's I-2 filing system. No problems with that filing system that night, that morning, following day. No problems whatsoever. This, plain and simple, was just a failure of them to allot enough time to file the motion. So in your understanding, the quote, unquote, technical problem does not include the failure of the user's equipment. Correct, correct. Does it say that somewhere? Yes. That it does not include, right? Yes, it's in the Supreme Court. All the Supreme Courts, actually, it's in their manual that I've cited in my brief, and it's also in new Rule 9. If you read Supreme Court Rule 9, it specifically, it says there's only two instances where you're allowed to get possible judicial relief. And this applies now to all courts. As of January 1st, it now applies to the circuit courts. But there's only two reasons. One is technical failure, which they define right in that definition, Justice Spence, it says does not include failure of user's equipment. And the other is if the clerk's office didn't receive, never received it, that's a possible ground for relief. But that didn't happen in this case. It didn't happen. It's not a real complicated case. Can I stop you for a second? Rule 9, you said it goes into effect this month? January 1st for the circuit courts. Right, so it was not in effect at the time of this event. That's correct, but it is instructive. You're allowed, there's case by side from the second district where you're allowed to look at that even though it's not binding on the court, it is instructive. But your position, too, is the Supreme Court manual at the time basically said the same thing. Yes, correct. Then let me ask you this. Where does good cause come into play? Good cause comes in, that is in the local rule 22.0124, which is at issue. That's part of it. If it is a technical problem, which it isn't here, but if it is, then you look at good cause. And Judge Prochaska said they don't even reach the level of a technical problem. And he found there was no good cause, but this is one step removed from technical. So your position is you have to find both. First, there has to be a technical problem as defined, and then and. Yes. Even though it would be a problem on your side, the plaintiff would still have to show good cause? Yes, Your Honor. Yes. It's not an either or. No. And that's the local rule. The local rule does say. I'm sorry. But let me. Is that more stringent than the Supreme Court rule? Because as you know, your local rules cannot require more. Right. That's correct. It can't be in conflict with the Supreme Court rules. I don't believe that is in conflict, although I'm not sure of that. I don't believe it is. I think that also the court has discretion. It always has discretion. It's not an automatic. If somebody has a technical problem, I think they're in harmony, both the Supreme Court rule and the local rule here. So they're not in conflict. You said that the trial court did find there was not good cause. Did they? Well, at the outset of the opinion, Judge Kruschevska mentions good cause. He didn't really elaborate on that, but it's implicit in his decision. He didn't come right out and say. At the beginning, he does say there's good cause. He says. He mentions Rule 22.01 too, and then he does go into his decision. He says, I don't know what technical failure means, and I don't have to look at that. I don't have to because what happened here doesn't even rise to that level, and it didn't. What happened here is they waited until 1158 and a 30-day filing period and motion to reconsider. They took the chance that they left no room for error, but they erred, and they had to live by the consequences. And Justice Jorgenson, you're absolutely right. A deadline should meet a deadline. And if you don't, like Judge Kruschevska said, you open a Pandora's box. You open a Pandora's box because you're going to have plaintiffs or whoever, defendants, come into court with any little problem, as Judge Kruschevska puts it, glitch, and they're going to swamp the trial courts with all these stories of what happened. You know, my battery was dead in my computer. This happened, and it's just going to be chaotic. Here's my dilemma, or one of my dilemmas with this. You've presented an affidavit from the deputy clerk, who I have no quarrel with, but how does the plaintiff get beyond that? Are we going to say, well, if the plaintiff has the burden, or the moving party, here is the plaintiff, has the burden to show that there was a technical failure on your part. Are we going to get into discovery? Are we going to start allowing that moving party to get some of the clerk's records for that day to show, hey, no, you know what, there was a glitch at 10 o'clock. There was a glitch at 4.30 that day. So therefore, it is more likely it was, you see where I'm going with this? Yes, I think, Judge. And so where do we go? I mean, respectfully, I'm pretty sure the clerk's always going to say, our system, I-2-5, God bless it, was working perfectly at that time. How does the plaintiff ever prove that the issue was not on my end, but the issue was on your end? Well, what we did, just in this case, what we did when I learned about this, we immediately checked with the court system to see if there was a technical problem. If there was a technical problem, then I wouldn't have, our office would not have a problem with this. It would have been unequivocal. I appreciate that. And you checked, and I give you credit for if there had been a problem, you'd have owned up to it. Right. But it's his birth to show. Why wouldn't we allow disclosure? Why wouldn't we allow the plaintiff to take depositions of anyone who might have been in charge of it or to get the records, for example, that you reviewed, hand them over, and let the plaintiff have another expert who would come in and say, I mean, where do we say something went wrong here? Something delayed the intake in that 1158 to midnight. How do we, how did even Judge Prochaska decide that it was I-2-5's problem or it was the plaintiff's problem? Computer problem. Right. And what happened here is the stance Judge Prochaska took is I'm going to let both sides submit affidavits. And if we get to the point where after you submit the affidavits I think we need to go beyond that and have discovery, we'll do that. And I want to see what the deputy clerk says and I want to see what the paralegal says. And that's how we start. Now, if there was a type of problem, if Deputy, Chief Deputy Lawson said yes, then I think, yes, I think you would have to allow discovery. I don't think you could cut it off unilaterally like that. I think that would be the way to handle it. Well, let me ask you this. Was it an abuse of discretion here to not allow plaintiff fair access to the clerk's records, respectively? Yeah, no, Justice Jorgensen, because here the affidavits were pretty clear that she received a message, choose a file, and the deputy clerk said choose a file means you didn't attach it. You just didn't attach the file. That's what happened. So that was not, he was well within his discretion to do that after reading the affidavits. So basically he concluded it was human error. There was no computer failure at all. Right. He said, and I want to quote him, he said, and I have his quote here, but something to the effect is this just wasn't done right. They didn't attach the file. It just wasn't done right. And it's no fault of the county or the court system. It's their fault. But their fault being that of a person not doing it correctly as opposed to finding fault with either, I'll say, electronic system, whether it was in the plaintiff's office or in the Puento Valle circuit clerk. Correct. Does that distinguish this case from the other? Yes, I think it does. I think it does distinguish this case. And also, Justice Jorgenson, to get to your point about a deadline, for consistency and efficiency of the court system, you need a firm deadline. You know, is it going to be 12, like you mentioned, is it going to be 1201, 1202, 1203? Different judges could have different interpretations, I guess. Another judge in Winnebago County could have decided differently. But that's not the point here. It's whether or not Judge Prochaska abused his discretion, whether or not, and that's, as you know, a very high standard to overcome. It's plaintiff's burden to show, and he has a burden of several things. One other part of the case which wasn't mentioned by plaintiff's counsel is Rule 183, which he brought up kind of late in his brief. I don't mean late in time sense, but near the end of his brief. And Rule 183 says for motions, under Rule 183, you can backdate motions. But it's got to be in accord with it. No, my Supreme Court rule or pleading, this was neither. And there's case law that I'd say from the 2nd District right on that point, and Judge Prochaska found that was the case. Mr. Gilbertsy, let me ask you this. I know the trial judge used the analogy, which we've heard here repeated a couple times, that the lawyer goes to the clerk's office, leaves the motion in the car, has to go back out to the car to get it. The door is locked. He can't get back in. What if, in using an analogy similar to that, the lawyer who goes to the clerk's office has with him a notice of motion, let's just say hypothetically, files the notice of motion, doesn't have the motion itself with him, has to go out to the car to get his motion, runs back in, door is locked. Under that scenario, we might consider that a little differently. Yes. Now, what prevents us from considering this in a similar fashion? Filing was, the filing process was initiated. There was an attempt made to file it unsuccessfully, and then, oh, shoot, you know, it's marked two minutes late. Right. Do you follow me? Yes, I follow you, Justice Spence. What is different in this case is it's just as if... And this e-filing system, all this stuff is very new to everybody. Right. And I think that is one of the things we want to take into consideration, that this is all new, and everybody is doing their best that they can to try to sort all this stuff out and to get through this. I wouldn't say computers are new to everybody, but this particular process is. So tell me, what do you think? Justice Spence, it really comes down to lack of preparation and lack of due diligence. It really comes to that because this is similar to somebody at the clerk's office who has an empty file. An empty file. So that's not a notice, but an empty file. Says, oh, no, I left it in the car. I'll be right back. It's 4.58. And by the way, the clerk's office here did close it, but their mandatory electronic filing wasn't the case when this case... It is now on Monday, though, but it was not the case. So Mr. Bowden had the opportunity to file it over the counter by 5 p.m. that day. He had an opportunity to, after an extension, to do that. But getting back to your question, Justice Spence, it's just like someone going to the counter without anything in their file. What happened there? It's not similar to a notice. They weren't prepared. It's just like leaving the file in the car. They should have five minutes earlier, ten minutes earlier. Now, who waits? I guess they have the right to wait until after, but that's a risky take. That's a risky take, and their lack of due diligence should not be rewarded here. So I would say it's similar to someone going to the clerk's office at 4.58, leaving the document they want to file in their car, rushing back, coming back. It's 5.03. The clerk's office closes the door. They slip it under the door, hoping it's going to be date stamped that day, and it's not. It's the same thing. Returning to our paper analogy, just for one more question. If you go back to the real old days when we all started, you'd have an assistant clerk actually write on a paper folder file, and not use a computer at all, write the name of the plaintiff and the defendant and the case number, and then write it in a docketing book and all that kind of stuff. So are you saying this is more akin to the clerk beginning maybe to write on the file, but not having any papers to put in the file? Yes, it is. I'm just trying to find an appropriate analogy here. Yes, I would. Because something was begun. Something was initiated. Right. They attempted to file it. They did attempt to file it. But with the guidance from the Illinois Supreme Court, which is in the same context as this case with electronic filing, they do not allow user error to be, they don't want to open the door. They don't want to have a Pandora's box and open the door to user error. So on June 12, 2013, when he attempted to file this, how long had Winnebago been in filing at that point? Approximately a year and a half. We were one of the pilot counties, along with DuPage. And about a year and a half. And September 1 of last year, in several cases in Winnebago, it was mandatory. But at this time it was not mandatory. It was not mandatory. I'm sorry. So to take this written analogy or the paper analogy with the clerk's office and go back a few years, he goes to the clerk's office. It's 504-55-58. He says, oh, here's my notice. And he says, oh, shoot, I forgot in the car. And he runs back to the car, and the clerk is sitting there waiting for him. And he goes in, and she file stamps it for him. And but he didn't have that option here where he was a few minutes, like two minutes late. And should we take a look at that and say, well, gee, he attempted to start something. He didn't have the benefit of the clerk saying, okay, I'll wait for you. No. Why shouldn't we look at it in that respect and say, because let's not forget, Mr. Baldwin might have screwed up, and his clerk might have screwed up. But Robert Periano did not. And so wouldn't it be a bit harsh for Mr. Periano, who is the true plaintiff in this case, to say to him, hey, your lawyer screwed up by two minutes. He followed notice, but he didn't get the motion attached to it. Justice, I don't think that would be harsh. He's, Mr. Baldwin is Mr. Periano's legal representative. That's his obligation and duty. And a deadline has to mean a deadline. A deadline at midnight means a deadline. And if, again, if there's fault on the court's end, that's a different story. If there's a natural disaster or, you know, weather or shutdown in the filing system, the court's filing system, that's a completely different story. But this is plain and simple. Use your ear. There's no dispute about it. And a deadline, you've got to have a solid deadline or else it's going to be, you know, there won't be, it's just going to be chaotic. Open the Pandora's box, as Judge Prochaska wrote in his opinion. I have another question for you. Justice Spence suggested that with the initiation, that is to open a file, for example, the paper, file with the case number on it, nothing in it. But that was not the case here. This was an ongoing case. There was already a file, correct? Yes, correct. There was a file. Because this is a motion to reconsider. Something obviously has already been filed. Yes, correct. Right, right. But still, Justice Jorgensen, you still have the deadline. Oh, I appreciate that. But the point is this was not initiating a case. That's true. This was not suggesting to the clerk open a file. That's correct. That's correct, yes. Yes. You had mentioned, I think it was either in the affidavit or somewhere, that Mr. Lawson wrote the local court rules. Yes. Did he write those, or did he borrow them, or did he copy them? He wrote those, but they're very similar. He used DuPage County because they're the forerunner in electronic filing. He pretty much, I think, copied the rules from DuPage. He might have made it. I talked to him. It's pretty much what DuPage has. There might be a few little differences, but because DuPage started the electronic filing, he used those. I know the answer to that question, sir. Right. Right. Right. So, really, there was a good cause here. There was not an abuse of discretion,  was arbitrary or fanciful or out of the mainstream. I think Judge Prochaska should be given deference here. He thought it out. He took his time. He heard arguments. He submitted briefs, and I'd ask you to affirm his decision. Thank you. Thank you. Thank you very much. Counsel, would you wish to reply? Thank you. Thank you. I think what they've ignored here, we can't change the fact in our brief, page 4, we're talking about their local rule. It's not page 4, but we're talking about the local rule N-2-4. N, title, system or user errors. We didn't write that. They wrote it. The Supreme Court, if you go through what they established for their pilot program, they had nothing specifically on user errors. And I said at the beginning of this, I thought it's a question of different terms. Technical failures was used by the Supreme Court. Different phraseology by DuPage, which everybody copied. Mr. Lawson, I think, if he thinks he wrote that, we can take that, but it's obviously the same as everybody else wrote. And the other issue from Winnebago is it says user system errors. Here it is, user system errors. So it's directed at user errors. It's not specifically not directed at the vendors, not directed at the clerk. We don't care. And my opponent, Mr. Gibralti, keeps saying, well, we didn't do this. We didn't do this. And interestingly, I highlighted it as much as I could in my reply brief, which Judge Prochaska says, it's not the vendor, it's not this. He says at Record 67, my page 5 of the brief, it was simply user error. Now, you go user error, you look at their local rules, not mine, and it says if it's a user error, then, and they give you the dots between it, it says because of other technical problems experienced by the filer. That's us. We, the filer, we experienced a technical problem. The technical problem is when one reads that in her after date. Counselor, let me just ask you this. Yeah. Prochaska hears all the evidence and determines that it was human error, not technical error. Right. Show me where that's an abuse of his discretion. Respectfully, I don't know if I'm in the same wave as that. I'm really respectfully going on the local rule. User error, that's what we have. I can't change it. He himself says, as I just said at page 6, it's user error, and that gives us, upon good cause, he did not tunk it. And one other thing to needle you. And the good cause you're asserting would be what? Well, the good cause respectfully, Judge, is Maureen's after date is unequivocal. I plugged it in. There's no additional exhibit. She takes whatever you take, throws it in wherever she takes it, punches what she was told and trained to do, and it says punch again, so we punched again. She was in their unit in their service at their clerk's window at 1158, and when it got diddly-doodled out, it came out to 120328 or something like that. I want it to be very embarrassing, and I apologize, but I try to have a sense of humor. You just came out with a case called IOPIEGARI, like you think you should know, so the 206, he'll have second, 160594. Counsel, have you shown that to opposing counsel? I'm just using you in the argument. No, I haven't. I apologize. But the key is your footnote on page 2 says, we are not at 150 days, as the Supreme Court said. We're at 151 days. Due to unexplained electronic or Internet problems. So the Illinois Supreme Court mandated you to have your decision on 150th day for whatever reason, which you say is due to unexplained electronic or Internet problems, not even an explanation, just that, and I don't find fault with you. Well, you know, we work our butt. The case happened six years ago. It's a serious case, and we're talking about two minutes and three minutes and 20 seconds or something, and they can't refute. We're going to talk all we want about the user error. It's focused in on the local rule that says it's user error. They're giving us a provision directed just to us, user error. Does the Supreme Court manual talk about user error? Pardon me? The Supreme Court manual. The Supreme Court manual was in the pilot program. If you read it, they did not mention as a technical thing. They have technical things, but they don't say technical problems, nor do they address user or system errors. That crept up when it was implemented by the Illinois court, whatever that is in Bloomington, and that was picked up in Cook and then DuPage. That's when we first see, and it's in the history, the word user or system errors first appear there. Now, it's got to be followed. Why do they put it in there? Is that scratch paper? I'm very glad that Judge Petraschka says, well, it was simply user error. It wasn't the clerk's error. It wasn't the vendor's error. Hello? We know that. It was user error, and this provision in the rules, and 2.4, local 22.1, gives us that saving grace that we need. And that's what I am using. Would you like to make some concluding remarks? Your time has elapsed. Oh, sure. I think there's nothing more we can do. I think Justice Spence picked it up. It's so bad that the Supreme Court, and you know this, I think you should know this, the Supreme Court extended their time because nobody can figure it out. Our experiences in the trenches are, it's a mess, and we did everything we could. Do this, do this. It says by midnight of the day. We do it two minutes earlier? And I have a, you don't want me to cite the case, but it says if you got it in, good. We put it in their system. We gave it to their, right in the system. You didn't walk away with a parked car. We put it in the machine, and then they go, whoops, it's now 12.03. What more can we do? And then their guy says there's no problem on our end. We don't care who's problem. We're admitting that it's a user error. I mean, I technically would say it's not our error. It's something that they did, but we are using it for argument, and to fit the bill here, it is a user error because it didn't suck it in and stamp it right. Thank you very much for your time. Thank you so much for your questions. We will return shortly at 9.30. Thank you.